EASTERN DIST.
*April*, 1838.

GRAVIER'S
CURATOR
*vs.*
RAPP, f. w. c.

GRAVIER'S CURATOR *vs.* RAPP, f. w. c.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF
NEW-ORLEANS.

Where a party is surprised for want of a knowledge of his adversary's title, which, if disclosed, he could have defeated, he should show this by affidavit, as grounds for a new trial.

The affidavit of a party is admissible in evidence to show the loss or destruction of his titles, by supporting the circumstances which render the loss probable.

So, where the destruction of the dwelling house is shown by proof, the oath of the party will be received in evidence, to show that his title deeds were destroyed with it.

Payments of some of the instalments of the price; occupation of the premises ten years in the knowledge of the plaintiff; having them surveyed and building a house thereon, furnishes circumstantial or presumptive proof of ownership, when the written title is shown to be lost.

This is a petitory action ; the plaintiff as curator of the estate of the late John Gravier, instituted suit to recover two lots of ground in a square, bounded by St. John, St. Peter, Common and Gravier streets, in New Orleans, in possession of the defendant. The plaintiff alleges, that there were two lots, twenty-six feet seven inches front on St. John street, by one hundred and twenty-seven feet ten inches deep, and so designated on a plan of the ground made by the surveyor-general. That the defendant claims lot No. 6 and part of No. 5, according to said plan, and refuses to deliver them up. He further alleges, she never had any title to the lots in question, but was only a tenant of Gravier, and paid him rent. He prays that the property be declared to belong to Gravier's succession, and that a writ of possession issue.

The defendant pleaded a general denial, and averred, that she was the owner of the lots in controversy by a just title,

EASTERN DIST.

*April,* 1838.

GRAVIER'S
CURATOR
*vs.*
RAPP, f. w. c.

and had been in peaceable possession ten years, in the knowledge of John Gravier, who constantly resided in the city of New-Orleans. She also pleaded prescription.

Upon these pleadings and issues, the case was tried before the court and a jury.

In the progress of the trial, there were bills of exception taken to the admission of certain evidence, which is noticed fully in the opinion of the court.

The jury returned a verdict for the defendant, finding from the evidence that she was entitled to a lot thirty feet front on St. John street, by one hundred and twenty feet deep, French measure, as surveyed by J. Pilié, city surveyor.

From judgment confirming this verdict, the plaintiff appealed.

*L. Janin,* for the plaintiff.

1. This suit was instituted to recover a lot of ground, which was in the possession of the defendant, and which the plaintiff alleges to be the property of the estate of John Gravier.

John Gravier formerly owned the whole rear of faubourg St. Mary, including the square in which this lot is situated. The plaintiff must therefore prevail, unless the defendant should show a title emanating from John Gravier.

The jury found a verdict in favor of the defendant, for the lot of ground surveyed by Joseph Pilié, having thirty feet front, by one hundred and twenty in depth.

The testimony of the two individuals who mention a receipt given by Gravier to the defendant, is contradictory and of the most suspicious description. But even if its truth could not be questioned, it is utterly insufficient to support a claim of title.

The answer merely sets forth that the plaintiff had a good title, and had possessed the lot during ten years, in the presence of Gravier.

The plaintiff prayed *oyer* of the original of this title of a private act, or of a copy of it, of a notarial act. This was refused by the court and a bill of exceptions taken, page 6.

Eastern Dist.
*April*, 1838.

GRAVIER'S
CURATOR
*vs.*
RAPP, f. w. c.

This refusal of the judge was certainly erroneous, the consequence of it was, that the plaintiff was completely taken by surprise ; for, under the answer, he could certainly not expect that the defendant would attempt to prove a title *emanating from Gravier*, and thus the plaintiff had no opportunity of meeting the testimony of the defendant's two witnesses, and to show that it was untrue.

2. The testimony of these witnesses was introduced by the affidavit of the defendant, " *that the papers under which she claims title to the lot, were destroyed by fire.*" This affidavit, although objected to on account of its indefiniteness, was admitted and a bill of exceptions taken, page 11. In this particular also, the parish judge erred ; for, by article 2258, the party may indeed offer his affidavit to prove the loss, and then go into secondary evidence of the contents ; but it is clear that the document must be so described in the affidavit, as to leave no doubt of its identity with that of which the contents are afterwards stated by the witnesses. If the court will please to read again the above quoted part of the affidavit, they will see that whatever might be the true state of things, it would be impossible to convict the affiant of perjury, under that affidavit ; or to show that the paper of which the witnesses speak, is not that alluded to in the affidavit.

3. The testimony of the witnesses itself speaks of a receipt by Gravier, but is altogether so vague, and when not vague, so suspicious in its clumsy assertions, as to deserve no confidence. If those facts were true would they amount to a sale ? Would they entitle Gravier's representatives to sue for the price, which, according to the witnesses themselves, has not been paid entirely ? The truth probably is, that Gravier agreed with the defendant to sell her some portion of ground, if she paid him a certain sum of money ; that Gravier permitted her to take possession, relying on her promise to pay him, and that the sale never was passed, because she never performed her undertaking.

4. But what proof is there that the writing of which the witnesses speak, was genuine; that it was in the handwriting

EASTERN DIST.
*April*, 1838.

GRAVIER'S
CURATOR
*vs.*
RAPP, F. W. C.

of Gravier; that the witnesses knew his handwriting and understood his language? There is no evidence whatever of all this, and the testimony is therefore utterly incomplete and does not sustain the defendant's pretensions. A precisely similar case is found in 5 Martin's Reports, 664, (Bradley's Heirs *vs.* Calvit.)

It is true that one of the witnesses says, that the writing he had seen was in English. But if the defendant had not been permitted to take the plaintiff completely by surprise, the plaintiff would have had witnesses in court, to show that Gravier never knew and never wrote a word of English in his life.

5. Lastly; the jury gave a verdict for the lot of ground surveyed by Pilié. Pilié indeed swore that he had surveyed a lot for the defendant, but where? the precise situation of it is not shown. And why was the verdict for a lot of thirty feet by one hundred and twenty? This admeasurement was a fanciful creation of the jury; the testimony says not one word of the dimensions of the lot; the jury might as well have given a verdict for a lot of any imaginable size and shape, as for a lot of thirty by one hundred and twenty feet.

*Denis*, on same side.

*Mace*, for the defendant, urged, that the evidence fully supported the verdict of the jury, and that the judgment be maintained.

2. The defendant has shown such a title and possession as is sufficient to sustain the plea of prescription. *Louisiana Code, articles* 3437, 3442 and 3447.

3. The evidence shows an agreement between the parties, amounting to a sale, and also payments. The agreement in writing was lost, but its former existence and loss is fully shown.

*Martin, J.*, delivered the opinion of the court.

The object of this suit is the recovery of a lot of ground, which it is alleged, the defendant possesses without title:

EASTERN DIST.
*April*, 1838.

GRAVIER's
CURATOR
*vs.*
RAPP, f. w. c.

Where a party is surprised for want of a knowledge of his adversary's title, which, if disclosed, he could have defeated, he should show this by affidavit, as grounds for a new trial.

The affidavit of a party is admissible in evidence, to show the loss or destruction of his titles, by supporting the circumstances which render the loss probable.

So, where the destruction of the dwelling house is shown by proof, the oath of the party will be received as evidence, to show that his title deeds were destroyed with it.

Payment of some of the instalments of the price; occupation of the premises ten years, in the knowledge of the plaintiff; having them surveyed and building a house thereon, furnishes circumstantial or presumptive proof of ownership, when the written title is shown to be lost.

she denied that the plaintiff had any, and averred title in herself, and pleaded prescription. She had a verdict and judgment, and the plaintiff appealed.

Our attention is first arrested by two bills of exception; the first is, to the refusal of the court to sustain the plaintiff's motion for *oyer* of the defendant's title. The bill does not contain any of the reasons on which *oyer* was obtained or refused.

The plaintiff and appellant's counsel has contended, that he was taken by surprise, and that had the defendant disclosed her title, he would have been able to gainsay it. If this was the case, the plaintiff could have been relieved by showing it on an affidavit, as a ground for a new trial.

The second bill was to the admission of the defendant's affidavit, of the destruction of her title by fire. This was opposed by the plaintiff's counsel, on the ground, that the destroyed paper cannot be sufficiently described. The judge admitted the affidavit, on a suggestion, that he did not consider the oath of the party, mentioned in the 2258 article of the Civil Code, to apply to the *contents* of the written instrument, alleged to have been lost or destroyed, but to the loss or destruction, for the purpose, in the words of the article of the Code, to support the circumstances which render the loss probable.

It appears to us, that the affidavit was properly admitted. The defendant showed the destruction of her house by fire. It is probable that a party keeps his title deeds in his own house; but as they are by some deposited in bank or elsewhere, it is required of the party who shows the destruction of his house, that he should establish by his oath, a circumstance, which often cannot be established in any other manner, to wit: that the deeds were destroyed with the house.

On the merits, the defendant proved by witnesses the payment of two instalments of the price of the lot, for which the plaintiff gave his receipts; that she occupied it in the knowledge of the plaintiff for upwards of ten years, and

built a house thereon.   She   showed that she had it sur-
veyed by the city surveyor.

The plaintiff's counsel has urged that the jury has given
a verdict for a lot of thirty by one hundred and twenty feet,
without any evidence of the dimensions of the lot sold by the
plaintiff.   It is very probable that the jury were determined
by their knowledge of the ordinary size of lots, according to
the plan of the city or faubourg.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the Parish Court be affirmed, with costs.